UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR GONZALEZ and ANEL GONZALEZ<br><br>Plaintiffs,<br><br>v.<br><br>WILMINGTON TRUST, NA, SUCCESSOR TRUSTEE TO CITIBANK, N.A., ET AL.,<br><br>Defendants. | Case No.: 15-CV-01565-AJB (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART AND GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE** |

Presently before the Court is Defendant JP Morgan Chase Bank's ("Chase") motion to dismiss Cesar Gonzalez ("Cesar") and Anel Gonzalez's ("Anel") (collectively referred to as "Plaintiffs") First Amended Complaint. (Doc. No. 68.) Plaintiffs filed an opposition to the instant motion on September 6, 2016, (Doc. No. 71), and Chase filed a reply on September 14, 2016. (Doc. No. 73.) Upon review of the motion, opposition, and reply, the Court finds the motion suitable for determination on the papers and without oral argument pursuant to Local Rule 7.1.d.1. Accordingly, the motion hearing set for December 1, 2016, at 2:00 p.m. in Courtroom 3B is vacated. As set forth more fully below, Chase's motion to dismiss is **GRANTED IN PART**.

///

## I.   BACKGROUND

The following facts are taken from Plaintiffs' complaint and are accepted as true by the Court for the purpose of resolving this motion. *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (in ruling on a motion to dismiss, a court must "accept all material allegations of fact as true").

On February 22, 2007, Plaintiffs obtained a mortgage loan for real property located at 445 Silver Shadow Drive, San Marcos, California 92078 ("the Property") (Doc. No. 65 ¶¶ 1, 7.) In September of 2012, Plaintiffs entered into a loan modification agreement with Chase. (*Id.* ¶ 8.) The agreement permanently fixed Plaintiffs' monthly loan payments to an amount of $3,031.14. (*Id.*) Plaintiffs allege that they filled out Chase's ACH program application, which allowed Chase to automatically debit Plaintiffs' account, at the same time they entered into the loan modification agreement. (*Id.* ¶ 9.)

In February of 2014, Cesar received an alert from his credit monitoring service that stated that Select Portfolio Servicing, Inc. ("SPS") was reporting that Plaintiffs had a delinquent mortgage payment. (*Id.* ¶ 10.) Plaintiffs contend that they were never provided notification informing Plaintiffs that their loan had been sold to SPS. (*Id.*) Shortly after receiving this first credit alert, Anel made a telephone call to Chase in order to investigate why SPS was reporting their loan as delinquent. (*Id.* ¶ 11.) Chase informed Anel that Chase had sold the servicing rights to their loan to SPS and that Plaintiffs were five payments behind on their loan. (*Id.*) Plaintiffs state that after reviewing their bank account information, that they missed at most two payments for the months of July and September 2014. (*Id.* ¶ 12.)

Around the same time as the phone call above, Anel called the phone number for SPS. (*Id.* ¶ 13.) As directed by the SPS agent, Anel provided the agent with Plaintiffs' current contact information and was told that SPS would send Plaintiffs a welcome letter. (*Id.*) Based on the representations from Chase, Anel then informed the SPS agent that Plaintiffs were allegedly behind on their loan payments. (*Id.*) The SPS agent then invited Plaintiffs to apply for loan modification with SPS. (*Id.*) Anel completed the loan

modification application over the phone as well as made February's loan payment. (*Id*.) After the phone call, Anel alleges that she complied with SPS's instructions and submitted all financial documentation SPS required via email. (*Id*.)

Plaintiffs contend that they never received SPS' welcome letter or their monthly statements for March, April or May of 2014. (*Id*. ¶¶ 14, 15, 16.) As a result, Plaintiffs were forced to call SPS multiple times to confirm Plaintiffs' contact information and request their monthly statements. (*Id*.) In addition, starting in March of 2014, Plaintiffs state that SPS no longer allowed them to make their monthly payment over the phone. (*Id*. ¶ 14.) Thus, Plaintiffs arranged for their monthly loan payments to be made electronically every month to SPS via EMC Mortgage Corporation. (*Id*.)

In September of 2014, Plaintiffs called SPS to check on the status of their loan modification application. (*Id*. ¶ 20.) Plaintiffs were directed to speak to SPS agent Cole. (*Id*.) Cole explained that the status of their loan modification was incomplete and that SPS would no longer accept Plaintiffs' monthly loan payments as they were $38,000 past due. (*Id*.)

On March 27, 2015, Plaintiffs called SPS again to check on the status of their loan modification. (*Id*. ¶ 22.) SPS agent Paul helped review Plaintiffs' file. (*Id*.) Paul informed Plaintiffs that SPS had everything it needed to continue with Plaintiffs' loan modification. (*Id*.)

In May of 2015, Plaintiffs called SPS and spoke with agent Anne Horrocks. (*Id*. ¶ 23.) Ms. Horrocks informed Plaintiffs that their loan was in foreclosure and a sale date for their home was scheduled. (*Id*.) Ms. Horrocks then told Plaintiffs not to worry about the sale date as it would be postponed as Plaintiffs' loan modification application was pending. (*Id*.)

In June of 2015, Plaintiffs received a Notice to Vacate the Property. (*Id*. ¶ 24.) The Notice stated that the Property was sold at a foreclosure sale and alleged that Securitized Trust was the new owner. (*Id*.)

On July 15, 2015, Plaintiffs filed suit against several defendants[1] in San Diego County Superior Court asserting claims for (1) breach of contract; (2) negligent misrepresentation; (3) violations of the Homeowner Bill of Rights; (4) violation of California's unfair competition law; and (5) wrongful foreclosure. (Doc. No. 1-2 at 3.)[2] On August 14, 2015, Chase filed a motion to dismiss. (Doc. No. 9.) On September 28, 2016, Chase's motion to dismiss was granted as to Plaintiffs' claim of unlawful and fraudulent conduct under California's Unfair Competition Law. (Doc. No. 27 at 5, 8.) On February 16, 2016, Plaintiffs filed a motion for leave to file a first amended complaint, (Doc. No. 44.), which was granted on June 15, 2016. (Doc. No. 56.) Chase filed a motion to dismiss Plaintiffs' first amended complaint ("FAC") on August 19, 2016. (Doc. No. 68.) This case was fully briefed on September 14, 2016.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "A court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (internal citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a

---

[1] Defendants include Wilmington Trust, NA, Successor Trustee to Citibank, N.A., as Trustee F/B/O Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3, JPMorgan Chase Bank, N.A., and SPS.

[2] Page Numbers are in reference to the automatically generated CM/ECF page numbers and not the numbers on the original document.

court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Chase moves to dismiss Plaintiffs' negligent misrepresentation claim for failure to allege a false representation, justifiable reliance, and damages. (Doc. No. 68-1 at 2.) Chase also moves to dismiss Plaintiffs' unfair competition claims as Plaintiffs fail to allege a "causal connection between Chase's alleged wrongful conduct and their claimed damages." (*Id.*)

### A. Negligent Misrepresentation

The elements of negligent misrepresentation are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* 158 Cal. App. 4th 226, 243 (2007).

Chase argues that Plaintiffs did not justifiably rely on the alleged misrepresentation as Plaintiffs could have reviewed their bank account to determine whether they were actually in default on their mortgage. (Doc. No. 68-1 at 7.) In opposition, Plaintiffs argue that Plaintiffs' reliance on Chase's statement that they were five months in default is justified as it is only reasonable to rely on the representations made by one's bank. (Doc. No. 71 at 5.)

The question of whether reliance is justified is usually a question of fact for determination of the trial court. *Gray v. Don Miller & Assoc., Inc.*, 35 Cal. 3d 498, 503 (1984). "However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1992). Plaintiffs' FAC show that they are capable of

calling and emailing SPS multiple times to check on their loan modification as well as pay their mortgage over the phone. (Doc. No. 65 ¶¶ 13, 14, 15, 16.) In addition, Plaintiffs state in their FAC that they had access to their bank account statements. (*Id.* ¶ 12.) Thus, it would be unreasonable to find that Plaintiffs applied for a loan modification with SPS before checking their account to see if Chase's alleged misrepresentation was true or false. *See Anschutz Corp. v. Merrill Lynch and Co. Inc.*, 785 F. Supp. 2d 799, 827 (2011) (the Court found that plaintiff had adequately pled justifiable reliance as plaintiff alleged in their complaint that given the "complexity and novelty" of the securities at issue, plaintiff had to rely on the ratings provided by defendants who had access to nonpublic information). In contrast, in this present matter, Plaintiffs did have access to their information and were fully capable of checking their account statements. Accordingly, Plaintiffs' reliance on Chase's alleged misrepresentations is not justified.

Chase also contends that there is no causal relationship between the alleged misrepresentation and the harm caused. (Doc. No. 68-1 at 8.) In response, Plaintiffs argue that their damage is the loss of their home, deriving from a notice of default based on Chase's false representations. (Doc. No. 71 at 6.) Plaintiffs argue that Chase's failure to "debit certain monthly Loan payments despite that it had solicited Plaintiffs' authorization to debit monthly payments" in addition with Chase's misrepresentation deprived Plaintiffs of their property. (Doc. No. 65 ¶¶ 80, 81.) The Court finds there to be a causal relationship between Chase's alleged misrepresentation and the resulting foreclosure of Plaintiffs' home. Nevertheless, as Plaintiffs have not sufficiently pled justifiable reliance, Plaintiffs' negligent misrepresentation claim is **DISMISSED WITH LEAVE TO AMEND**.

### B. Violation of California's Unfair Competition Law ("UCL")

The UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…" Bus. & Prof. Code, § 17200. Because Business and Professions Code section 17200 is "written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are

unlawful, or unfair, or fraudulent…" *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).

### 1. Unfair Conduct

Conduct is "unfair" under the UCL when the alleged unfairness (1) "offends an established public policy" or (2) "when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the utility of that conduct is outweighed by the harm to the consumer. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169-71 (9th Cir. 2012).

Chase argues that Plaintiffs have no standing to bring this claim as only plaintiffs who have suffered actual damage may pursue a private UCL action. (Doc. No. 68-1 at 9.) In response, Plaintiffs argue that they do have standing as their damages is and are related to the loss of their home. (Doc. No. 71 at 7.)

Plaintiffs' complaint alleges that Chase unfairly reported that Plaintiffs missed five monthly loan payments and failed to debit certain monthly loan payments from Plaintiffs' bank account. (Doc. No. 65 ¶¶ 79, 80.) As a result, Plaintiffs were deprived of their property. (*Id.* ¶ 81.) The allegation that Chase's failure to debit payments and alleged misrepresentation resulted in Plaintiffs' loss of their home is sufficient to allege unethical, oppressive, unscrupulous or substantially injury to Plaintiffs. In addition, the loss of one's home is sufficient to satisfy the economic injury prong of the standing requirement of section 17204. *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 522 (2013).[3] Therefore, Chase's motion to dismiss the unfair conduct claim is **DENIED**.

///

///

---

[3] The Court notes that Chase cites to *Luceras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 83 (2013) to argue that when a borrower's own conduct causes their home to be subject to foreclosure, the causal connection required to plead a UCL claim is not satisfied. (Doc. No. 68-1 at 9.) Reading Plaintiffs' complaint as true, this conclusion does not apply to the present matter as Plaintiffs' claim is that it was Chase's alleged misrepresentation and failure to debit their account that led them to apply for loan modification with SPS which then led to the foreclosure of their home.

2. Fraudulent Conduct

A claim under the fraudulent prong of the UCL is governed by the "reasonable consumer" standard, which requires the plaintiff to "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation and internal quotation marks omitted). If a UCL claim is grounded in alleged fraud, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply, requiring allegations of fraud be pleaded with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Applying Rule 9(b), Plaintiffs' complaint does allege that Chase engaged in fraudulent conduct. (Doc. No. 65 ¶ 79.) However, the complaint fails to address with particularity how Chase's actions were fraudulent. Plaintiffs simply state that "Chase and Securitized Trust acted fraudulently and unfairly in reporting that Plaintiffs missed five monthly Loan payments while Chase was servicing the Loan." (*Id.* ¶ 79.) Accordingly, as Plaintiffs' FAC does not plead with the particularity needed to satisfy the heightened pleading standards of Rule 9(b), Plaintiffs' UCL claim for fraudulent conduct is **DISMISSED WITH LEAVE TO AMEND**.

C. Chase's Request for Judicial Notice

Chase also filed a request for judicial notice in support of its motion to dismiss. (Doc. No. 68-2.) Pursuant to Federal Rule of Evidence 201, Chase requests the Court take judicial notice of several documents of public record, including (1) the February 27, 2007 Deed of Trust; (2) the May 7, 2012 Notice of Default; (3) the May 7, 2012 Rescission of Notice of Default; (4) the January 16, 2015 Notice of Default; and (5) the June 16, 2015 Trustee's Deed Upon sale recorded in the Official Records of San Diego County. (*Id.*)

While, "as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion…it may take judicial notice of matters of public record and may consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (quotation and citations omitted). Judicial notice is appropriate when a fact is

"generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Each of the documents Chase requests judicial notice of are official public records recorded by San Diego County. Plaintiffs do not challenge the authenticity of the documents, and as public records, judicial notice is appropriate. Accordingly, Chase's request for judicial notice is **GRANTED**.

### D. Leave to Amend

After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party. Fed. R. Civ. P. 15(a). Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). This policy is to "be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court offered the following factors a district court should consider in deciding whether to grant leave to amend:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, et. – the leave sought should, as the rules require, be "freely given."

Not all the factors merit equal weight. As this circuit and other have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. *See DCD Programs, Ltd. V. Leighton*, 883 F.2d 183, 185 (9th Cir. 1987).

Chase asks this Court to dismiss Plaintiffs' FAC with prejudice. (Doc. No. 68-1 at 2.) The Court finds that there exists no bad faith, undue delay or undue prejudice to the opposing party in granting leave to amend. The Court does note that after Plaintiffs were

1  granted leave to file an amended complaint on June 15, 2016, (Doc. No. 56), the Court
2  struck the amended complaint from the docket for failure to file the same amended pleading
3  Plaintiffs proposed with their motion for leave to amend. (Doc. No. 64 at 2.) Plaintiffs then
4  filed this present FAC on August 5, 2016. (Doc. No. 65.) Despite this, the Court still finds
5  no reason as to why Plaintiffs should not be granted leave to amend. As a result, Plaintiffs
6  are granted leave to amend its negligent misrepresentation and fraudulent conduct claims.
7  The Court takes notice that this will be the second time this Court has granted Plaintiffs
8  leave to amend its fraudulent conduct claim.

## IV. CONCLUSION

As set forth more fully above, Plaintiffs' negligent misrepresentation and fraudulent conduct claims under the UCL are **DISMISSED WITH LEAVE TO AMEND**. As Plaintiffs have plead a claim of unfair conduct, Chase's motion to dismiss as to this cause of action is **DENIED**. Therefore, Chase's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Chase's request for judicial notice is also **GRANTED**. If Plaintiffs intend to file an amended complaint, they must do so within fourteen (14) days of the date of this order.

Dated:  October 12, 2016

Hon. Anthony J. Battaglia
United States District Judge